Next case is Atra DX, the General Hospital Corporation v. QIAGEN Sciences, LLC, 2023-2350 and 2379. Mr. Bilsko. Good morning. I'm just going to grab my appendix. Good morning and may it please the court. Both patents in this case required target-specific primers, and target-specific primers are DNA molecules that have very specific sequences that anneal to very specific sequences in target molecules. The court's denial of JMOL on both of these patents was improper because the undisputed evidence showed that the target-specific primers in both cases or in both patents did not have the required sequences. In particular, starting with the 597 patent, the court's denial of JMOL was improper because the undisputed evidence showed that the accused target-specific primer, which was abbreviated FP for forward primer, did not have target-specific hybridization sequence, which was part of the definition of the target-specific primer. Step A of the 597 patent requires, well, stepping back, the only way that this was allowed to go to the jury as far as that target-specific primer in the 597 case was to ignore the principle of antecedent basis and allow the plaintiff to actually flip the molecule that it had started with. Step A of the 597 patent requires a target-specific primer having a target-specific hybridization sequence that anneals to sequence in a first strand of a double-stranded target nucleic acid. Step B requires a plurality of primers that anneal to sequence in a second strand complementary to the first strand of the same double-stranded target nucleic acid. Over the course of 12 pages of testimony on cross-examination, plaintiff's expert admitted that the accused forward primer, the target-specific primer that he was alleging, did not have the target-specific hybridization sequence. And I will point the court to Appendix 612, Transcript Page 585, Lines 1 to 6. Question. The forward primer that you have accused of being the target-specific primer does not have a target-specific hybridization sequence because it cannot bind to anything in the double-stranded target nucleic acid, which is line 2 of DDX2. Correct? Answer, correct. That should have been the end of it. The accused primer, he admitted, did not have the required sequence. Realizing that he might try to... Is the idea here that the FP primer anneals to the adapter and not to the target sequence? That is one of the arguments, but let me address the argument that I'm speaking of right now. So the forward primer does not, it anneals not to the adapter sequence. So the molecule that you start with has parts that are overlapping, that are complementary, and then it has these arms, which are single-stranded. Parties refer to those arms as handlebars. The court referred to them as three-prime and five-prime tails. The expert had to admit that the accused forward primer could not anneal to anything on that molecule, which is what they identified as the double-stranded target nucleic acid, because it had to anneal to the complement of the target. That's how... The complement of the adapter sequence. That's not present when you start. It's not present in that molecule. It's not created until you go through steps of the process, and that's where the problem comes in, with the changing of the molecule and the lack of anesthesia basis. So he was asked, because we realized that he was going to try to change, he was then asked at Appendix 613, Transcript 587, well, are you abandoning that molecule that you just admitted the forward primer cannot bind to? I've got to say that the way you're arguing this makes it really difficult to understand, rather than easier to understand. And you've got a problem, because you're arguing that there should have been JMO here. And I think you've got to articulate this in a way that's understandable. So the reason that there should have been JMO is that there is not substantial evidence supporting a requirement of that target-specific primer. The target-specific primer that they accused, the forward primer, had to have target-specific hybridization sequence. And from that question and answer that I just pointed to at Appendix 612, lines 1 to 6, the expert admitted it did not. The only thing that they did was— Why don't you deal with the 810 patent? Sure. Where we're talking about equivalence, function where result, and language that uses the term identical, and we have a difference in the number of nucleotides, so that arguably there's no identity. It seems to me those ought to be the stronger points. I agree with Your Honor that those are strong points. I do think there's a strong point on the 597 as well, but I will address that. On the 810, the second target-specific primer was required to have sequence identical to a second sequencing primer. The second sequencing primer had 34 nucleotides. The accused primer only had 19. We said 19 is not identical to 34. It should be over. And in that situation, the court did not give the jury any instruction as to the scope of what it meant to be identical. And the patent itself, the 810 patent at Column 17, actually gives you a lot of guidance on what it— No, no, no, no. In Hewlett-Packard, we said if you don't ask for claim construction, which neither party did here, we look at the instruction that was given to the jury and ask whether that could be a reasonable result given the instruction. You do not do post-verdict claim construction, which is what both sides are trying to do here. That's not appropriate. It's a question of what identical means. I mean, you've got a pretty good argument that identical means identical, but you can't go back and try to get us to look at the specification and do a claim construction after the verdict. That's not right. We did file summary judgment on this very issue, which was decided about a week before trial. We then objected to the jury instruction that the court gave to the jury. We presented our own jury instruction, which is Appendix 848, in which we said identical means the same number of nucleotides and the same identity. But as far as— I didn't see that in your brief you were appealing the rejection of the jury instruction. Did you do that? Oh, absolutely we did. Where does the brief say that? So it's in the reply brief, the gray brief. What about in the blue brief? I believe that it is in the blue brief. I don't have exact memory of it right now. I think you're going to have to point us to a specific page in the blue brief where that would be appealed. You can't raise it for the first time in the gray brief. It certainly wasn't raised for the first time on appeal. You can't raise it for the first time in the gray brief to us. On my rebuttal, I will go back and give you the exact site. You don't even need to go into claim construction. You've got a pretty good argument based on the actual language of the instruction itself. Identical means identical. I completely agree with you. And the patent itself draws a distinction between identical to a portion. The definition of portion in the specification says the whole or a subset. And at 17, when speaking of the second adapter primer, there's actually an example. Maybe just to sum up your argument, I think you're arguing that identical does not encompass matching only a subset. Exactly, Your Honor. I think we've got to go back to this 597, though, because that one I feel like is the harder argument, and I'm trying to understand exactly what you're saying. Would it be possible, and I don't know if this is the right page, for you to talk us through it with some figures as opposed to just purely the testimony? Sure. So there is a figure in the opening brief, which is derived from JX 8.12. And JX 8.12 appears in the appendix. What page of the opening brief do you have? It's page 50 of the opening brief. What's this? It's also at page 12 of the opening brief. And I can point you to the appendix as well, the actual exhibit. 1046. 1046, which is from JX 8.12, which was the handbook, and everyone agreed that this outlined the process. So the expert, oddly enough, on direct examination admitted that he never actually told the jury what the double-stranded target nucleic acid was. On cross-examination, we had to try to get to that point. And this is the second argument on the 597, right? It is the second argument. And what they're saying is that the second strand was changed so that it would hybridize to it, right? No. They're saying, so what we started out with was in JX 8.12, you have three molecules at the top. You have the double helix molecule. Then the next molecule on the second line, you have double-stranded molecules after fragmentation. And then the third line, you have what we call the handlebar molecule. And the expert was asked, starting with step B or starting with step A, regardless of which one you start with, what are you referring to as the double-stranded molecule? And he said, that one with the handlebars. And that's why when he was asked that question at transcript 580— So are you referring to the one that is third from the top on appendix page 1046? I am, and there was some confusion because I always refer to lines. I said the second line, and he said, no, it's the third one. But we did focus on the fact that it was the one with the handlebars. There's only three double-stranded molecules there. So everyone talked about handlebars. And even the court, in its jury instruction at 848, referred to specifically when she said double-stranded target nucleic acid, that can be, in the jury instruction, the thing with the three-prime and five-prime tails or arms. So— Could you come back to the first theory about the 597? Sure. Because I am not understanding what you are saying. I thought I understood your argument was that the FP primer does not anneal to the target molecules, that it anneals instead to the adapter. That's wrong? I'm wrong about that? It's a little more nuanced than that. The argument was that the adapter sequence is not actually target sequence. And the reason it's not target sequence is because the definition of target sequence and target molecules refer to sequence and molecules that you are going to analyze. And the testimony came at a trial that no one ever analyzes that adapter sequence. They actually throw it away. But the predicate to that is that it anneals to the target sequence, to the adapter sequence, and not to the target sequence. No? No. It doesn't actually anneal to the adapter sequence. It anneals to—as the process goes on, it anneals to complement that's created. So that's the whole problem. When you look at a molecule that has single-stranded arms— It's not limited to annealing to the target sequence? Is that the idea? No. It is limited to—so there's two arguments on the 597. One, adapter sequence is not target sequence at all because it's garbage sequence that no one cares about. That's argument number one. Argument number two is even assuming it is target sequence, the forward primer does not actually anneal to that sequence with the handlebars. It anneals to sequence that's created from that sequence as the process goes on. You know, you keep saying I'm not right in describing it, and then you go on to describe it in a way that seems the same as what I'm saying. I mean, please try to help me here because this is not easy, and I am not a scientist. You know, I understand the concept of a primer. I understand what it does. I understand the theory that the forward primer doesn't adhere to the target-specific sequence. What does it adhere to? To the hole, to the target-specific sequence and the adapter? Is that the theory? But is it it's not limited to the target-specific sequence? It includes the adapter also? No, and I apologize if it's not clear. This is kind of confusing and why it was confusing to the jury. What we're talking about is you have these arms out here, and those arms are part of what they identify as the double-stranded target nucleic acid, and the forward primer has to anneal to some sequence in that molecule. You know, you can accept for purposes of argument that all the sequence in that molecule is target sequence. But the admission that came from the expert was, you're correct. It does not actually anneal to any sequence in that molecule. And what they tried to do is, on redirect, identify other molecules that they said were, well, other double-stranded molecules are created. Well, that's irrelevant. The claim actually says other double-stranded molecules get created as you go through the process. But the issue is the double-stranded target nucleic acid that you started with, that forward primer has to bind to some sequence in there, and it does not. And that should end the inquiry. You can't change the molecule. That would violate antecedent basis. I do want to address foreign damages. Unless you don't want me to do that, it looks like I only have 10 seconds left. Take a minute to address damage. So on the foreign damage issue, the common thread between CMU and the Brumfeld case, regardless of which formulation of the test that you adopt, the reason that JMOL should have been granted is because both of those cases say, during the hypothetical negotiation, you need to identify a domestic act of infringement and then tell us why, for that domestic act of infringement, the royalty rate should go up. And that never happened here. And it's very clear in the Brumfeld case. It says you can't just include foreign sales in the royalty base. But that's exactly what the damages expert did. Appendix 561 to 562, you'll see, that's all he did. And in this case, under 271A, and actually factually, none of the factual sites that they identified support domestic acts of infringement. They said, well, design and development. The red brief at page 5 actually admits that the product was sold in 2016. Development was done. We got sued in 2018 on the day the patent issued. Development was done. They said numbers were generated to sell the products. Well, the numbers were generated, if you look at the question and answer, they were developed or those numbers were generated during design, again, two years before the patent issue. Counsel, damages, I think, is the easiest part of this case. We'll give you three minutes for a bottle. Thank you, Your Honor. Mr. Reines, take 20 minutes if you need it, because we've added more for appellant. Thank you, Your Honor, and may it please the Court. Why don't I start with identical, because that was some of the questioning that we heard, and I know that's of interest. The first thing I'd like to point out, consistent with what Judge Dyke said in terms of framing the inquiry, is that QIAGEN objected to its own construction at A848 in a very strange document submitted on the eve of the jury after the evidence closed, and they said in light of the hearing on August 16th, QIAGEN objects to the foregoing construction offered by themselves and proposed the following additions. This goes to the point is they proposed a construction for the first time at A848 after that. Let's back up. We don't have a construction by the Court that was presented to the jury, correct? No, we do. What was the construction that was presented to the jury? The construction was that the—it's a long one, but it's the second target-specific primer, and it has multiple components. The last component, which is what the Court's interested in. Can you give us the appendix page? A97. And it's also— Wait, A997? So I have final jury instructions, and that's back at appendix 902. Wait, what did you say? I don't know if I'm missing the page. Let me get to that. Oh, yeah, I'm going to—the Court gave the definition that's in the patent, so I went there. I don't think it's a disputed item. This is at 33 through 39. But the statement is comprising a nucleic acid sequence that is identical to a second sequencing primer. But the question was, did the jury get instructed on what identical meant? Oh, no, sorry. I thought you meant a definition. So that's the end of it. Unless somebody raised a claim construction issue that's being presented on appeal. We have to deal with the instruction that was given, and under Hewlett-Packard, whether a reasonable jury could conclude that that limitation was satisfied. Precisely, but I was responding to the argument that they had preserved it when I was just showing that, in fact, they'd first introduced and objected to their own instruction. They haven't shown us where in the brief they raised this issue, so let's just stick with it. How can a reasonable jury say that something is identical when it's not identical? That's a problem. It's a fair question, and let me do my best to answer it for your honor. The reason why identical is step two of the infringement analysis, which we're all agreeing, that's what we just spent that time on. It's the fact-based inquiry. It's because in different systems, and these are very complex systems, and they vary from experiment to experiment, it's context-dependent what's identical in view of what the purpose is. The sequence is identical. The number is not identical. So the sequence is, in fact, identical. The number is not identical. What do you mean by the sequence is identical, but the number is not? Because the sequence that's present is identical. It's just that there's what you call a subset. Are you meaning like when we're talking about 34 nucleotides versus 19, the 19 will line up with the 34, but there'll be some missing? Is that what you're saying? Yes, but it's just non-existent, yes. Okay, I don't think that's identical. Well, Your Honor, that's why this is a step two issue for a jury that went through a tutorial, that learned about the overall system, that had expert evidence where the expert explained that the purpose of the identity is for annealing purposes. So in order to have— And just to clarify, in terms of the jury instructions, there was nothing in the jury instructions regarding identical or identical for a portion or something like this?  So to be clear, identical was the construction, right? That's not in the claim. The construction had the word identical, so when Your Honors are asking was identical the construed, it was the construction. What do you mean? I don't understand. The word identical came in through the construction because that's the definition of second target-specific primer. Okay, but there's no definition of identical, right? That's part of the definition, but it's not further described, yes. It's not in the claim. It's the construction. Identical is in the claims. Not this instance of identical. Not the one. This is the—I'm sorry for being complicated, but it's the definition of the second target-specific primer includes the word identical. Let me just ask you a question like this. Sure. What did the jury have before it with respect to the word identical? What was in front of the jurors with respect to the word identical? Just to be clear, it had no explication further of what identical meant. My point was it's not in the claim. It is the construction. I'm sorry that that's the way it is. The word identical relating to second target-specific primer is not in the claim. It's just that's the definition in the patent for that term.  So it is a requirement as a construction of that term, and it's not further explicated. The point being, we now look, is there substantial evidence? And there is substantial evidence because there was expert testimony that said in the context of this system, and what the expert said is that it's compatible with the sequencer, which is, if you know the science— What page are you looking at? This is at A587, 48623-4878. So A587. And this is at 48623-4878. I mean, there's other instances, but that's where he explains the compatibility with the sequencer. Mr. Reines, we have laid out requirements regarding equivalence. Yes. Linking between the claims and the accused, and for a jury to find equivalence with subject matter of this complexity is really exceptional. Could you point out why function, way, result have all been satisfied here? Okay. And let me just add one prefatory point, and then I'll dive right into what Your Honor is saying. The jury and the district court judge spent dozens of hours, tutorials. They heard all the experts. So doing it in a 15-minute argument on appeal maybe even is more risky than what happened. Our job is to figure out whether there's substantial evidence. You haven't shown us yet how identical can mean non-identical, and I'm not seeing the testimony as saying that black is white and white is black. Well, it's a matter of identical sequence versus number. I've got two arguments. Let me go back to identical, and then I promise I'll go back to the doctrinal equivalence. And I apologize if that's not perfect. So with respect to the factual evidence as to identicality, Professor Landon explained it, and what the point is is that do you have sufficient identity of sequence in order to perform the sequencing task? Because it has to anneal to the sequencing primers, and then that has to go on the sequencer. That's the purpose of that requirement of the second targeted sequencing primer is to have identity so that it can be used in the sequencer. And it works. It's not missing sequence that prevents it from working. It actually works. And that's why the district court judge, who spent so much time with this argument, said that that's... Well, she said that portion is identity. That, to me, makes no sense. First of all, she said that it's a step two issue, whether identical is satisfied. I think that's correct. Why don't you go ahead and answer Judge Lurie's question. Okay. The only other thing I'd answer, direct you to, that you might appreciate, is that in the patent itself, it uses the term identical to mean this subset concept. And that's in column 17. And we take you through that and through the brief. It was factored. Well, no, it just shows that the... That doesn't mean that the jury can't see the different uses in the patent that show the flexibility of use. But the more important point is this was a question of fact intensively for the jury to consider. Now let me move to Dr. Equivalent. Judge Lurie waited patiently, and I took him to a little preparatory statement. Well, of course, the finding of infringement on the 810 patent was only doctrine of equivalence. That is key. One of the claim requirements, and that wasn't important. You're absolutely correct. There's no question. Not this one, not identical. That wasn't doctrine of equivalence. That was not. That's a literal component to it. But Judge Lurie's correct in the sense that you have to find an equivalent for the other half of the definition of the second target-specific primer. The function was three functions, but the important thing about the functions that were identified, and the key one is that it's paired, that the SIP is paired with a second adapter primer to avoid undesirable products. And there's two points that I want to make about that. The first is that the adapter primer is nested. And that nesting gives added specificity. The head of research, Dr. Wang, testified to that at A662, that that additional specificity helps you enrich, essentially, and only get that which you want. Regarding nesting, didn't the accused operate in a different way? No, because the argument that they make is that the claim, is that the second adapter primer, the problem is that it does perform the function, but that it does so with the second adapter primer. That was their complaint, I understood. Because, as your honor knows, in PCR, you always need two primers. So what you have is you have the nested adapter primer and the SIP primer, and through that you get the result. But the point I want to make on this is that if you look at the actual claim, it states that the second target-specific primer works with the second adapter. That's actually in the claim. So the fact that it would function with the second adapter primer is not a problem and shouldn't be a problem, because that's what the claim says the function is. And that's what Dr. Lennon testified that's at 8587588. When he walked through, he said there's three functions that are from the claim. The complaint about the fact that the second adapter primer contributes to avoiding the undesirable products shouldn't be a real problem, because the claim claims using those two primers together. So the essence of their argument is that the function is not satisfied by the S, what we call the STSP alone. But the claim tells you that it's being done with the second adapter primer. There's nothing wrong with the second adapter primer being nested. That's, again, in column 17, it describes that as an important part of the invention, as well as hemi-nesting, so you don't need to have the second target-specific primer perform the enrichment alone. It can do it with its pair primer, which is the second adapter primer. It's complicated stuff, but I think that's straightforward enough. What happens if the second adapter primer is not nested? The second adapter primer is not nested. What happens is that you need the other primer on the other side to help it do the work of that is nested, and the patent actually talks about if the first step enriches, they have that where it goes to the specific genomic DNA itself, and so they enrich that way. And then in the second one, they use the adapter primer with one extra base. There's nothing that requires the second target-specific primer to enrich itself. There's no basis for that requirement. It's not in the claim requirement. And we show how the function is performed with the adapter primer, which is nested. And in column 17, it says you can address the hemi-nesting by using the adapter primers for nesting as well. Do you want to briefly touch on 597? Sure. On 597, there's really two arguments. I thought Judge Dikey did a good job of trying to pull them apart. But they're discrete arguments. The first argument is that the forward primer can never be the target-specific primer. And the district court, I think, just explained and dismantled that. That's at 38 of her opinion. And it's actually in a footnote there. And the key there is that if you look at the bottom, it says the court used the 597's definition. All these terms are defined in the patents, and they're defined differently. And that's why sometimes it's hard to understand probably both counsel but certainly opposing counsel. The court used the 597's definition of target nucleic acid to construe the term. And it's a nucleic acid molecule of interest. Now, this is, I think, to scratch the itch of your question. When you have what you're trying to figure out, the actual genomic sequence you want to know, right, you could put a tag on, which is what our patent does. It's the adapter, right? The adapter, but there's different pieces, you know, and they have different functions. So just using the word adapter makes it sound like it's nothing. Some of them tell you what person it's from. Some of them are a label to tell you this is what you want. This is the goal. We have it. So they use a label. Is your theory that the adapter is a target-specific sequence? No. Our theory, not our theory, but upheld by the court and makes sense and what the jury accepted, is that the target nucleic acid, once you have the nucleic acid that's called out and you've labeled it, let's just say it has a sequence that says, this is it. If you have a primer that goes to the, that says, if you see this is it, prime there, and then let's run across and figure out what it is. If you do that, that's a target nucleic acid because what the key is, is it refers to the molecule is a target nucleic acid. And that's why opposing counsel gets tongue-tied because he's got to avoid that. It says a nucleic acid molecule of interest includes the actual genomic DNA you want to know, but the molecule, the molecule is defined as all of it, includes labels. Do you understand that their theory is that the FP primer is not limited to annealing to the gene of interest that's going to be analyzed? No, I think they have to admit that it does. I don't think that's their position. Because that's only, because that only, there's something called the GSP that comes in. It doesn't get extended out to the complement of the forward primer unless the GSP finds the DNA that you want. That's the issue is that you have the DNA sequence on there that's a label that says, hey, this is our gold. They use the primer for that. That is a target nucleic acid of interest. I mean, that's not that complicated. And that's why the district court said, yes, that's fine. She covers that in footnote three. We're talking about the whole molecule. We're not just talking about the limited sequence. So that's the first argument under 597, what was their primary argument. Now they have, and I. So the whole molecule is the area of interest. Because it's the one that has been called out by the GSP. It's not targeting the specific sequence that might show a mutation, right? It's indirectly targeting it because only those have it. It's not directly targeting it. I don't know. I mean, it's clearly infringing. I mean, they put a label on there that says this is it. And then it goes only to those. So it selects out the ones with the target nucleic acid, the target of interest. But the target nucleic acid of interest is defined as the entire molecule with the adapters that tell you that this is what you want to know about. But if you're wrong about that, you've got a problem. Well, that's where the specificity of the second step comes in. That's what the adapter primer adds one more. And by adding a different molecule there, Dr. Wang explains this. You do the double check. That's exactly the patent, and that's exactly what they do. They're infringing 597. And the jury was correct to find that, and the judge upheld it after years of working with the case. Can you also turn to Appendix 1046? Yes. To find out whether or not you agree with what the counsel said in terms of what is the BSTNA and the handlebar? Right. So the best way I can do it, and I hope this doesn't frustrate you, but is that Appendix 1732 is the same design, but it's got the annotations of our experts, so it shows that our experts pointed to the right double-stranded DNA. I mean, this argument has always been double-stranded double-talk to me. It's just double-talk. So if you're not understanding our argument on this double-stranded point, you're not alone. So just tell me what I should understand in terms of the commonalities and differences between Appendix 1046 and 1732. That the red box, see where it says double-stranded DNA? I do. is after the GSP, and that's their whole argument is that somehow it has to be the top element on 1732, and it can't be after the GSP. Because when you go through this, you see that the GSP is attaching to one strand of that double-stranded DNA, the 5' to 3'. And then on the next one, you see the FP is attaching to the other strand of the double-sided DNA. So the debate is about whether he's actually saying that the one that's circled with the red double-stranded DNA is the double-stranded DNA. It clearly is. And there was no confusion at trial about that. And I'm surprised that's their lead argument. I don't get it. But in any event, on target nucleic acid, you can see it also on this chart, which is the GSP selects out only that nucleic acid that's of interest, because it goes on to the unique adjacent area that you know. And then that extends, and then it multiplies out with the analog for the FP. And then the FP finds that, and so you know that it's what you want. So it's the way that you detect it. It might seem like a complicated way to do this, but that's why what we did over the course of trial is we explained that, and the jury understood it, and the judge had multiple occurrences of hearing it and understanding it. Counsel, we've given you extra time to match opposing counsel. Unless my colleagues have further questions, I think we'll listen to Mr. Gilsker for up to three minutes. Maybe I'm going to bring my stuff back. Can you hear me again? Yes. So pointing back to the citation for the claim construction issue, blue brief, page 31, we identified the fact that we had presented an instruction for the jury on identical, and that was not given to the jury. Can you turn to the 597 issue? Sure. And to address Judge Dyke, who I think I understand where you were having the confusion. Why don't you answer Judge Cunningham's question? I did. No, I asked him to turn to the 597 issues, and I'm fine with him addressing Judge Dyke's point. Sorry. So you were asking whether we're saying that the forward primer, whether the adapter sequence is the target sequence. So if you go back to 1046, that was plaintiff's allegation. So I'm going to actually draw a circle around the molecule on 1046, which is JX8.12, that the expert was questioned about. It's that molecule, the third one from the top, the one that has the handlebars and the three-prime, five-prime tails. That's what he identified as the double-stranded target nucleic acid. And when he was asked— Is that the adapter sequence? So the adapter sequence— No, wait. Yes, no. Is that the adapter sequence? The colored portions on the ends are the adapter sequence. Are you unable to answer my question? You can say yes, no, maybe. Is the whole molecule the adapter sequence? No. The tails are the adapter. No, the thing that you circled, is that the adapter sequence? No. Okay. That's the whole double-stranded target nucleic acid. Those arms, those handlebars, that's the adapter sequence in that molecule. Can you tell us which precise colors on the ends would constitute the adapter sequence in this one? All of the colors. All of the colors. Yeah. So after that thing that looks like a Roman II? Yep. Everything to the left on the left side and everything to the right on the right side are the adapter sequence. And that's what he's saying, the forward primer— And the only thing that it could possibly try to bind to is the adapter sequence. And their expert admitted that it cannot bind to that sequence. So what they've tried to do and what opposing counsel just tried to do— And I pointed you to transcript 585.1-6. And it happens again on 591-592 of the transcript where he admitted it again. And on 587 he admitted he was not abandoning this molecule in the circle. He said, no, I'm not abandoning that. I realize we have to bind to something in that molecule. So on redirect they introduced that 1732, that demonstrative that Mr. Reines referred to. But you know what? You will never see on this document anything identified as double-stranded target nucleic acid. And you know why? Because the double-stranded target nucleic acid is this one at the very top that their expert admitted was the double-stranded target nucleic acid. It's kind of like you're going to start a process where you've got to contact the molecule. Well, the molecule has to exist when you start the process. And once you pick what you're starting the process on, you can't then say, well, I realize that the forward primer doesn't actually bind to that. So let me just pick another molecule for the first strand to bind to that gets created somewhere down the process. If you do that, you have violated the antecedent basis. Footnotes 7 of our opening blue brief actually cites to discussion in the file history, the Anderson reference, and there's a citation there where they said you can't have two molecules. Now, I know you're running out of time, but I know there's a second argument on the 597 patent. I just want you to be able to briefly address that before you sit down. Sure. The second argument being that those arms, those adapter sequences, you know what they are already. So they're sequences that Illumina says if you're going to use our sequencer, you've got to put on. Everyone knows what their sequence is. They're non-indicative of any disease or anything. That's why in the instances where they show up, where it actually gets sequenced, everyone throws it away. It's garbage. That does not comport with the definition of what a target nucleic acid is or target sequence is. It's a dispute whether the target specific primer must be involved itself in filtering out undesirable products. So that would be the 810 issue. That's not actually a 597 issue. That's on the 810 on the doctrine of equivalence. And I will point the court to, and Judge Lurie, you asked about the doctrine of equivalence. There's a definition of target specific primer. What it means to be a target specific primer in the 810, which is Appendix 93, Column 8, Lines 49 to 44. To be a target specific primer, you must anneal to target sequence. In the 810, the target sequence for the second target specific primer is the known target nucleic acid sequence. I apologize, but I took you off on a different front. I want to finish and wrap up on the 597 second argument. Sure. In your most succinct way, please summarize the dispute. So I got confused because I thought you were referring to an argument in the 810. So there are two arguments on the 597. One is that the forward primer does not anneal to what they call the target sequence for, the adapter sequence. It does not do that. The target sequence, they say, is the adapter sequence? The sequence that they identify as being the target for the target specific primer, the adapter sequence, it does not anneal to that. I don't understand how the adapter sequence can be the target specific. Well, that's our first argument. The adapter sequence is not a sequence that you're interested in analyzing, so it doesn't make sense to call it target specific sequence. That is the first argument, Judge Cunningham. So does the FP primer adhere only to the adapter sequence? It anneals to sequence created from the adapter sequence after you go through a number of steps. And only that and not?  Any further? I never got to foreign damages, which I thought was the sexy issue that you all were going to question us on. Thank you. We have both of your arguments, and the case is submitted. Thank you, Your Honor.